**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

|  |  |  |
|---|---|---|
| MONARCH SCHOOL OF NEW ENGLAND, INC. | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Case No. |
| NEW HAMPSHIRE DEPARTMENT OF EDUCATION, ROCHESTER SCHOOL DISTRICT, JOHN DOE, JANE DOE, and TOMMY DOE | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**VERFIED COMPLAINT
FOR DECLARATORY JUDGMENT,
TEMPORARY RESTRAINING ORDER, AND
PRELIMINARY AND PERMANENT INJUNCTION**

Plaintiff Monarch School of New England, Inc. ("Monarch") brings this action for declaratory judgment, temporary restraining order, and preliminary and permanent injunctive relief against Defendants the New Hampshire Department of Education ("NHDOE"), the Rochester School District ("District"), John Doe and Jane Doe ("Parents"), and Tommy Doe ("Student") [collectively, "Defendants"], claiming in support as follows:

INTRODUCTION

1.      Monarch is a private school serving special education students from its facilities in Rochester, New Hampshire.  On January 12, 2026, Monarch terminated Student's placement at its facility due to Parents' unwillingness to abide by Monarch's policies regarding the supply of relevant medical information concerning Student, and Monarch's concomitant concerns regarding Monarch's ability to safely care for Student.

2.      Student thereafter pursued due process proceedings with the NHDOE, pursuant to N.H. Admin. R. Ed. 1123.01, *et seq.*, to challenge Monarch's termination of Student's placement.  In the most recent of these proceedings, Student filed a motion seeking to be immediately returned to his placement at Monarch pursuant to the "stay put" provision of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.*  See 20 U.S.C. § 1415(j).  Monarch objected to Student's motion, arguing that Student's placement remains unavailable for numerous reasons, including, *inter alia*, because Monarch is still without the information needed to safely care for Student and therefore is unwilling to permit Student's return to campus.

3.      Nevertheless, on May 14, 2026, a NHDOE hearing officer (the "Hearing Officer") issued an order (the "Stay Put Order") finding the placement at Monarch "available" and granting Student's request to enforce "stay put" placement at Monarch.  The Stay Put Order suffers from manifest legal flaws, and, if implemented, will imperil the safety, health, and wellbeing of Student.

4.      As a result, Monarch brings the instant action to protect the Student and to preserve Monarch's legal rights as a private institution.  Monarch submits a temporary restraining order immediately enjoining enforcement of the Hearing Officer's Stay Put Order is warranted under the circumstances.  Monarch further submits that it is entitled to a declaration that the Hearing Officer's Stay Put Order is unlawful and permanent injunctive relief preventing the NHDOE from issuing future orders that stray well beyond that department's authority over Monarch.

<u>PARTIES</u>

5.      Monarch is a New Hampshire 501(c)(3) nonprofit corporation with a primary business address at 105 Eastern Ave., Rochester, New Hampshire 03867.

6.      NHDOE is an agency of the State of New Hampshire, established pursuant to N.H. RSA § 21-N:2, and has a primary address of 25 Hall Street, Concord, New Hampshire 03301-3860.

7.      The District is a municipal corporation pursuant to N.H. RSA § 194:2, and has a primary address of 150 Wakefield St., Rochester, New Hampshire 03867.

8.      Parents are natural persons who reside in the State of New Hampshire.  Parents' identities and residential address are being withheld to preserve anonymity and confidentiality.

9.      Student is a natural person who resides in the State of New Hampshire.  Student's identity and residential address are being withheld to preserve anonymity and confidentiality.

<u>JURISDICTION AND VENUE</u>

10.      This Court possesses jurisdiction over the instant dispute pursuant to 20 U.S.C. § 1415(i)(3).

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), because all Defendants are residents of New Hampshire and the events giving rise to the claims at issue in this matter all occurred within the State of New Hampshire.

<u>STATUTORY AND ADMINISTRATIVE BACKGROUND</u>

12.      The IDEA is a law that makes available a free appropriate public education to eligible children with disabilities throughout the nation.

13.     The IDEA is implemented through a framework of federal statute (20 U.S.C. § 1400, *et seq.*), federal administrative rules (34 CFR § 300, *et seq.*), State law (in New Hampshire, N.H. RSA § 186-C), and State administrative rules.

14.     Pursuant to the IDEA, a state or local educational agency ("LEA") may place students in private schools and facilities "in accordance with an [IEP], at no cost to their parents, . . . as the means of carrying out the requirements of [the IDEA] or any other applicable law requiring the provision of special education and related services to all children with disabilities within such State." 20 U.S.C. § 1412(a)(10)(B)(i).

15.     In such instances, the "State educational agency shall determine . . . that children so served have all the rights the children would have if served by [State educational agencies and local educational agencies]." Id. at § 1412(a)(10(B)(ii). Put differently, the State educational agency is charged with ensuring "that a child with a disability who is placed in or referred to a private school or facility . . . is provided special education and related services . . . and has all of the rights of a child with a disability who is served by a public agency." 34 C.F.R. § 300.146.

16.     Similarly, under New Hampshire law, it is a school district's responsibility to "establish an approved program or programs for children with disabilities . . . [or to] pay tuition to such an approved program maintained by another school district or by a private organization." N.H. RSA § 186-C:10.

17.     Where disputes arise concerning a student's education, both federal and state statutes and administrative rules contemplate a formal resolution procedure. See 20 U.S.C. § 1415(b)(6); 34 C.F.R. § 300.507; N.H. RSA § 186-C:16-b; N.H. Admin. R. Ed. 1123.01, *et seq.* The procedures contemplate the filing of a due process complaint by either a parent or a public agency. See, e.g. 34 C.F.R. § 300.507(a)(1); N.H. Admin. R. Ed. 1123.03.

18.     Neither federal nor state due process procedures contemplate the filing of a due process complaint by a private school.

19.     During the pendency of an administrative or judicial proceeding regarding a due process complaint, "unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement." 34 C.F.R. § 300.518. This right is colloquially known as the student's "stay put" right.

20.     In the case of a student placed at a private school, their entitlement to "stay put" rights can be rendered unenforceable when the private school placement becomes "unavailable." See, e.g. Wagner v. Board of Educ. of Montgomery County, 335 F.3d 297, 301-02 (4th Cir. 2003) (affirming trial court's determination that private placement was unavailable where relationship between Student's family and private school had "deteriorated" and the private school "could not be counted upon to provide services"); Henry v. School Administrative Unit No. 29, 70 F.Supp. 52, 60 (D.N.H. 1999) (recognizing student's private school placement to be unavailable when the student aged out of the private school).

## FACTUAL BACKGROUND

21.     Student resides in Rochester, New Hampshire, within the District, with his Parents. He is 15 years old and is identified as a student with special education needs.

22.     Student has several medical issues requiring a significant medical administration regimen at school and close clinical assessment. His primary nutrition is by feeding tube due to swallowing challenges and subsequent silent aspiration.

23.     The District has placed Student at Monarch pursuant to an individualized education plan (IEP) since he was 6 years old.

24.     Student's placement at Monarch is subject to Student and Parents agreeing to abide by a Student Contract and policies in Monarch's Student/Parent Handbook.  The Parents most recently executed a Student Contract in July 2025.  True and accurate copies of the Student/Parent Handbook and Student's July 2025 Student Contract are appended hereto as Exhibits 1 and 2, respectively.

25.     Monarch's Student Contract includes the following provisions:

> I/We understand that attendance at Monarch School of New England is a privilege, and that the privilege can be revoked at any time by the Executive Director for good and sufficient reason.

> I/We agree that it is essential that MSNE have continued access to the medical records of the Student for the duration of the Student's attendance at MSNE and I/We agree not to unreasonably refuse to provide access to the Student's medical record for the duration of the Student's enrollment with MSNE.

See Exhibit 2.

26.     Until September 2025, Student was tolerating, accessing, and making progress under his IEP.

27.     In summer and early fall 2025, Student's medical condition began rapidly changing.  Student experienced significant weight loss, change in the frequency of vomiting, increased fatigue, and a gaunt complexion.  Due to this change, Student was no longer able to enjoy and sustain normal periods of instruction and therapy services.

28.     Ultimately, the Student had two lengthy hospitalizations in late 2025 – the first from October 21, 2025 through November 12, 2025 (15 school days) and the second from December 2, 2025 through December 23, 2025 (16 school days).[1]  As a result of these

---

[1] Student's parents did not notify Monarch of the December hospitalization.  Monarch only learned of the hospitalization when the Student's bus driver reported it to Monarch Staff. Monarch thereafter contacted Student's parents to verify.

hospitalizations, Student attended only nine of 41 school days from October 21, 2025 through December 23, 2025.[2]

29.    After Student's first hospitalization – in October and November 2025 – Student sought to return to school.  Prior to Monarch permitting Student to return, Monarch required Student to supply certain medical information.  Monarch also required a re-entry meeting to discuss Student's medical status.  Both requirements are consistent with Monarch's policies and practices.

30.    On November 11, 2025, Student's primary care physician supplied medical information, including Student's feed and medication orders.  November 11, 2025 was a school holiday, but the following day Monarch took steps to clarify the orders with Student's parents.  Student then returned to school on November 13, 2025.

31.    Upon returning to school in November 2025, Monarch staff had significant concerns regarding Student's well-being.  For example, Monarch staff noted increased periods of sleep and frequent intolerance of his feeds which often resulted in vomiting.  Moreover, Student was unable to tolerate his educational instruction for more than 5 minutes during a planned 30-minute session before becoming exhausted and expressing discomfort.

32.    After just nine school days at Monarch, Student returned to the hospital at the beginning of December 2025.

33.    On December 26, 2026, during Monarch's holiday break, Student's parents sent an email to Monarch staff that Student was no longer hospitalized, reporting that "[a]fter another lengthy hospital stay, the cause of [Student's] ongoing weight loss remains unclear."

---

[2] Monarch kept the District informed to the best of its ability during Student's extended period of absence.

34.    Thereafter, Parents sought to re-enter Student at Monarch as school resumed following the holiday break on January 5, 2026.  Included with the request was a letter from Boston Children's Hospital ("BCH") – one of Student's providers during his hospitalizations – containing new feed orders and a statement that Student was able to "return to school and baseline activities per parental discretion."

35.    Monarch staff corresponded with Parents via email on January 2 and January 3, 2026 to arrange a re-entry meeting and to discuss Student's hospitalizations and learn updated medical information.  Monarch offered January 5, 2026 – Monarch's first day open following holiday break – as a meeting date.  Parents declined to meet that day but scheduled a meeting for January 6, 2026 with the District invited to attend.

36.    On January 6, 2026, Monarch's nursing, education, and therapy providers met with Student's mother.  The District did not attend.  During the meeting, Monarch staff attempted to obtain required medical information.  Student's mother refused to provide all information requested, including Student's current medications and a hospital discharge summary.  The mother also declined to execute medical releases that would allow Monarch to communicate with, and obtain information from, Student's current medical providers.

37.    Following the refusal of Student's parents to provide medical information and releases, Monarch's nursing staff raised concerns about their ability to safely care for Student in the absence of the requested information.

38.    Monarch kept the District informed, via email, about impediments to Student's reentry.  During a virtual meeting on January 8, 2026, Monarch detailed concerns regarding Student's safety.  Monarch informed the District that its staff would not compromise on health and safety policies that allowed Monarch to appropriately care for Student.

8

39.    In subsequent emails with Monarch, Student's parent again refused to return the requested medical releases but instead offered to submit to Monarch school-relevant medical information that was obtained from Student's providers.

40.    By email on January 8, 2026, Monarch's Executive Director, Jeanette Souther, reminded Student's parents that Student's placement at Monarch was conditioned upon the parents' release of medical information allowing phone and fax communications with Student's medical providers.  Ms. Souther advised Parents to review the Student Contract and Monarch's Student/Parent Handbook.  Ms. Souther stated that, if the parents did not agree with Monarch's requests and policies, they could pursue an alternative placement for Student.

41.    Student's parent responded to Ms. Souther's email by again refusing consent to the requested releases.

42.    Between January 9 and January 12, 2026, Student's parent corresponded with the New Hampshire Department of Education regarding Monarch's requests for medical information.  In that correspondence, Special Education Complaint Coordinator Kaite Gianotti advised Student's parents that private schools, like Monarch, "operate under their own rules and procedures, which can include requirements for health and safety."  Ms. Gianotti reiterated that Monarch "has a policy that requires parents to sign a medical release when a student returns after a significant medical event or hospitalization."  Per Ms. Gianotti, "[t]hese polices are set by the private school and are generally conditions of enrollment or continued attendance."

43.    Ms. Gianotti also informed Student's parents that **"[e]ven when a student attends a private school placement, the public school district remains responsible for providing a Free Appropriate Public Education (FAPE) under the student's IEP**.  This includes all services outlined in the IEP, such as medication administration during the school day,

9

transportation, and related supports.  The district cannot transfer this responsibility to the private school or make it contingent on additional requirements that are not part of the IEP."  (Emphasis added.)

44.      On January 12, 2026, given the parents' continued refusal to supply Student's current medical information and releases, Monarch terminated Student's placement.  Monarch notified the District of this action via letter, stating "Given the student's medical complexity, with parental refusals to provide the required information to ensure [the Student's] safety and well-being while in our care and on our campus."  Monarch also requested that the District inform Student's parents and immediately schedule an IEP meeting to discuss Student's placement.

45.      Thereafter, on or about January 29, 2026, Student's parents brought a due process complaint against the District and Monarch.

46.      Due to apparent scheduling constraints on behalf of the District and Student's parents, the requested IEP meeting was not held until February 5, 2026.  Monarch participated in the meeting but still had scant information concerning Student's medical condition, particularly as the Student had not been on campus for over two months.

47.      The Department scheduled a two-day hearing on Student's due process complaint for February 18 and 27, 2026.

48.      When the parties appeared for the first hearing day on February 18, 2026, they first took the opportunity to explore settlement.  The parties' settlement discussions bore fruit and led to execution of an Agreement.  In pertinent part, the Agreement required the following:

2.      Parents to provide releases to remain in effect while Student is placed at Monarch School of New England subject to the following:

 Fax and phone contact with Boston Children's Hospital - Inpatient Complex Care Service to receive Discharge Summary for all hospital stay(s) and speak with providers for clarifications, questions and concerns for all health matters related to orders, medications, and feeds.

 Fax and phone contact with Dover Pediatrics (or future PCP office of the student if there is a change) to obtain the student's complete medication list, and speak with providers for clarifications, questions and concerns for all health matters related to orders, medications, and feeds.

49.     However, in the weeks following execution of the Agreement, Parents continued their unwillingness to cooperate with Monarch so that it could obtain required medical information.  While the parents signed medical releases as contemplated under the Agreement, one of Student's medical providers – BCH – rejected the version executed by the parents.  Yet, when Monarch explained this to Parents, Parents refused to execute a compliant release, citing that they had already satisfied their obligations under the Agreement.

50.     Moreover, Monarch's good faith efforts to obtain information from Student's medical providers were met with uncooperative responses or no responses at all.  The scant information that Monarch was able to obtain, including from Student's primary care provider at Dover Pediatrics, was outdated or inconsistent.

51.     Based on the refusal by Student's parents to execute the release for BCH and the lack of meaningful information received from Student's providers, Monarch did not accept Student's re-entry, and, on March 9, 2026, again requested an IEP team meeting be convened to address a new placement.

52.     On March 10, 2026, Student filed a Request for Administrative Due Process Hearing seeking an expedited hearing and order enforcing Student's "stay put" placement at

Monarch, restoring the student's placement at Monarch, and ordering the District to provide compensatory services.

53.    On March 10 and March 11, 2026 Monarch had calls with a non-clinical employee at Dover Pediatrics and Dr. Caroline Leahy of BCH, respectively.  In both conversations, it was suggested that Monarch's nursing staff should "defer" to Student's parents with respect to Student's feeding tube prescription.  However, it would be inappropriate and unethical for Monarch's nursing staff to receive and implement feeding tube orders from parents, particularly when the parents are not medical professionals.  See RSA 326-B:29 ("No person may coerce an RN or an LPN into compromising client safety by requiring the nurse to delegate a nursing activity or task when the nurse determines that it is inappropriate to do so."); RSA 326-B:37 ("The board may discipline a licensee . . . for . . . [d]elegating or accepting the delegation of a nursing function or a prescribed health function when the delegation or acceptance could reasonably be expected to result in unsafe or ineffective client care."); see also Ed. 311.02(h)(requiring that a detailed written statement from a student's licensed prescriber be in the student's health record before prescription medications are given during the school day); Nur. 404.06 (regarding delegation of nursing tasks); see generally American Nurses Association, Code of Ethics, available at https://codeofethics.ana.org/provisions (last accessed March 20, 2026).

54.    In the ensuing days, Monarch continued its good faith efforts to convene an IEP meeting, as follows:

- March 10, 2026: Monarch confirmed availability on District's proposed March 13 and March 20 meeting dates;

- March 12, 2026: Monarch emailed District seeking update on scheduling;

- March 13, 2026: Monarch responded to District email proposing meeting on March 23, 24, or 25 by committing to review availability;

12

- March 16, 2026: Monarch confirmed availability on March 23 and March 25;

- March 17, 2026: District indicated Student's parents require full 10-day notice and proposed March 31 meeting date;

- March 19, 2026: Monarch confirmed availability for team meeting on March 31.

55. By late March, the situation Monarch found itself in January 2026 was unchanged. Namely, Monarch lacked the medical information required to be able to safely and appropriately care for Student. Monarch's efforts to obtain the required information were repeatedly stymied by Student's parents. Under these circumstances, Monarch continued in its refusal to permit Student's re-entry, as it was unwilling to compromise its commitment to provide outstanding and medically appropriate care to all its students.

56. On March 23, 2026, the Hearing Officer issued a Due Process Decision, denying Student's expedited due process request and Student's motion seeking to enforce "stay put" against Monarch. The Hearing Officer further ordered that the District ". . . continue to take all necessary steps to ensure the student receives FAPE, given that the student's last agreed-upon placement is unavailable, including convening a team meeting and offering services that proved the student with FAPE within 10 days of this order."

57. On March 26, 2026, Student filed yet another due process complaint with the Department.

58. The Hearing Officer scheduled a merits hearing in Student's due process proceeding for May 6 and 7, 2026.

59. On May 5, 2026, Student filed a "Partially Assented-To Motion to Enforce Stay Put" ("Stay Put Motion") seeking immediate reentry to Monarch pursuant to Student's "stay put" rights.

13

60.     On May 6 and 7, 2026, Monarch appeared and participated in the due process merits hearing.  During the hearing, Monarch's Director of Nursing testified that she continued to be without critical medical information concerning Student and his feeding tube orders.  As a result, the Director of Nursing testified that, in her medical opinion, it would be unsafe for Monarch to accept Student back on campus.  Monarch also presented testimony from its Executive Director confirming that Parents failed to abide by Monarch policies by unreasonably denying Monarch access to Student's medical records.  Monarch further presented expert testimony from an experienced school nurse that confirmed Monarch's requests for additional information were reasonable and that Student's safety could be adversely impacted if the requests remained unanswered.

61.     On May 13, 2026, Monarch objected to Student's Stay Put Motion, arguing that Student's placement at Monarch was unavailable for numerous reasons, including the fact that Monarch continues to be without sufficient medical information to safely care for Student.

62.     Nevertheless, on May 14, 2026, the Hearing Officer issued his Order finding the placement at Monarch "available" and granting Student's request to enforce "stay put" placement at Monarch.

63.     If implemented, the Hearing Officer's Order poses a considerable risk to Student's health, safety, and welfare, as Monarch lacks critical medical information about Student's condition and feeding tube orders.

<u>**COUNT I**</u>:
**DECLARATORY JUDGMENT**
**(Authority of NHDOE)**

64.     Monarch restates and incorporates by reference fully herein each and every preceding paragraph.

14

65. An actual controversy exists among the parties regarding the Hearing Officer's authority under the IDEA and its implementing rules and regulations.

66. Monarch submits that the Hearing Officer exceeded his authority by ordering Monarch to accept the Student back for the purposes of "stay put."

67. The IDEA binds public schools as operators of the state, but it makes no mention of binding private organizations.

68. The IDEA expressly contemplates that responsibility for students placed in private schools or facilities remains with the State, not the private school.

69. Monarch submits nothing in federal or state law permits the Hearing Officer to issue an order compelling Monarch to reenroll a student.

70. Monarch therefore seeks a declaration from the Court that the Hearing Officer exceeded his authority in ordering Monarch to provide Student a "stay put" placement.

**COUNT II:**
**DECLARATORY JUDGMENT**
**(Placement Unavailable)**

71. Monarch restates and incorporates by reference fully herein each and every preceding paragraph.

72. An actual controversy exists among the parties regarding the availability of Student's placement at Monarch.

73. Monarch submits that Student's placement at Monarch is unavailable as a matter of law because, *inter alia*, (a) Monarch lacks sufficient medical information to safely care for Student; (b) Parents have repeatedly refused to abide by Monarch's policies and rules which were conditions of Student's placement at Monarch; and (c) the relationship between Monarch

has substantially deteriorated such that Monarch is no longer willing to accept Student's placement.

74.   Despite these factors, the Hearing Officer issued the Order finding that Student's placement at Monarch is "available."

75.   Monarch therefore seeks a declaration from the Court that Student's placement is unavailable and therefore that Student may not enforce his "stay put" placement at Monarch.

**COUNT III:**
**PRELIMINARY/PERMANENT INJUNCTIVE RELIEF**

76.   Monarch restates and incorporates by reference fully herein each and every preceding paragraph.

77.   Monarch is currently subject to the Hearing Officer's Order compelling Monarch to provide Student with a "stay put" placement.

78.   Monarch continues to lack important medical information regarding the Student's condition and medical orders.  Monarch also lacks authorizations permitting direct communication with Student's medical providers.

79.   Given the information and authorizations that Monarch remains without, Monarch is unable to safely care for the student.

80.   Monarch is likely to succeed on the merits of its claims for declaratory relief regarding the Hearing Officer's authority and availability of Student's placement at Monarch.

81.   In the absence of preliminary and permanent injunctive relief, there is an immediate risk that Student will suffer irreparable harm at Monarch, because Monarch lacks information and authorizations that would allow it to safely provide Student care.

82.     A balancing of the equities weighs in favor of granting preliminary and permanent injunctive relief, including because precluding enforcement of the Hearing Officer's Order will preserve the *status quo* – namely, that Student is not placed at Monarch.

83.     Finally, the public interest weighs in favor of granting preliminary and permanent injunctive relief, including because Monarch aims to do what is in the Student's best interest by not forcing Monarch to care for a student about whom it lacks critical medical information.

84.     Monarch therefore requests that the Court issue a temporary restraining order immediately enjoining enforcement of the Hearing Officer's Order.

85.     Monarch also requests that the Court schedule a hearing to address Monarch's claim for preliminary injunctive relief, and, thereafter, enter a preliminary injunction enjoining enforcement of the Hearing Officer's Order during the pendency of this matter.

86.     Monarch finally requests that the Court issue a permanent injunction enjoining enforcement of the Hearing Officer's Order following a hearing on the merits.

WHEREFORE, Monarch requests that this Honorable Court issue an Order:

A.     Granting Monarch's request for a temporary restraining order immediately enjoining enforcement of the Hearing Officer's Order;

B.     Scheduling a hearing to address Monarch's claim for preliminary injunctive relief, and, following said hearing, entering a preliminary injunction enjoining enforcement of the Hearing Officer's Order during the pendency of this matter;

C.      Declaring that the Hearing Officer exceeded his authority in ordering Monarch to provide Student a "stay put" placement;

D.      Declaring that Student's placement is unavailable and therefore that Student may not enforce his "stay put" placement at Monarch;

E.      Granting Monarch's request for a permanent injunction following a hearing on the merits; and,

F.      Granting such other and further relief as may be just and proper.

Respectfully submitted,

MONARCH SCHOOL OF NEW ENGLAND, INC.

By their attorneys,

Dated: May 18, 2026

 /s/ Owen R. Graham
Owen R. Graham, Esq. Bar #266701
Soule, Leslie, Kidder, Sayward &
Loughman, P.L.L.C.
220 Main Street
Salem, NH 03079
Tel: (603) 898-9776
ograham@soulefirm.com

VERIFICATION

The factual allegations within the foregoing Verified Complaint are true to the best of my knowledge and belief.

Jeanette Souther
Executive Director
Monarch School of New England

STATE OF NEW HAMPSHIRE
COUNTY OF ROCKINGHAM

Personally appeared the above-named Jeanette Souther, on this 18th day of May 2026, and made oath that the foregoing statements are true to the best of her knowledge and belief.

Before me,

Justice of the Peace / Notary Public
My Commission Expires: 7/24/2029